UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

DAMON C. ROBERTS,

                Petitioner,        04-CV-1397
                                                  (00-CR-578)

   v.

UNITED STATES OF AMERICA,

                Respondent.
_____

THOMAS J. McAVOY,
Senior United States District Judge

## DECISION & ORDER

**I. INTRODUCTION**

      Petitioner Damon C. Roberts filed a motion pursuant to 28 U.S.C. § 2255 seeking to have his sentence and conviction vacated. Petitioner alleges that (1) his trial counsel provided ineffective assistance, in violation of the Sixth Amendment to the United States Constitution, (2) he was denied due process because two of the Government's principal witnesses gave perjured testimony at trial, and (3) that his sentence was in violation of the rule set forth in Apprendi v. New Jersey, 530 U.S. 466 (2000). See Pet. [dkt. #1-1 ]. The Government has opposed the motion. For the reasons that follow, the motion is denied and the petition seeking a writ of habeas corpus is dismissed.

**II. BACKGROUND**

      Petitioner was charged with crimes stemming from a robbery on May 5, 1997 of a truck carrying computer parts. Following a trial, the jury convicted Petitioner of conspiracy to interfere

with commerce by threats or violence in violation of 18 U.S.C. § 1951(a), interference with commerce by threats or violence in violation of 18 U.S.C. § 1951(a), conspiracy to engage in interstate transportation of stolen property in violation of 18 U.S.C. § 371, and interstate transportation of stolen property in violation of 18 U.S.C. § 2314.  On October 22, 2002, Petitioner was sentenced to concurrent sentences of 168 months imprisonment for counts one and two, sixty months imprisonment for count three, and 120 months imprisonment for count four.  Petitioner appealed his conviction, which was affirmed by the Second Circuit on December 8, 2003. See United States v. Bruno, 83 Fed. Appx. 361 (2d Cir. 2003).  Petitioner timely filed the instant motion pursuant to 28 U.S.C. § 2255 with the assistance of counsel, submitting lengthy arguments that far exceed that allowed by this Court's Local Rules. See N.D.N.Y L.R. 7.1(a)(1),  (b)(1).[1]

### III. DISCUSSION

#### 1.  Section 2255 Standard

A § 2255 challenge is limited to claims that "the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255.  Thus, relief pursuant to section 2255 is available only "for a constitutional error, a lack of jurisdiction in the sentencing court, or an error of law or fact that constitutes 'a fundamental defect which inherently results in [a] complete miscarriage of justice.'" Graziano v. United States, 83 F.3d 587, 590 (2d Cir. 1996) (quoting United States v.

---

[1] Local Rule 7.1(a)(1) provides: "No party shall file or serve a memorandum of law that exceeds twenty- five (25) pages in length, unless leave of the judge hearing the motion is obtained prior to filing." Petitioner submitted a Memorandum of Law of 43 pages (dkt. # 2), shortened by amendment to 42 pages (dkt. # 4). Local Rule 7.1(b)(1) provides in pertinent part: "Reply papers may not exceed ten (10) pages ...." Petitioner submitted a  Reply Memorandum of Law of 16 pages (dkt. # 16).

Bokun, 73 F.3d 8, 12 (2d Cir. 1995)) (internal quotations omitted).  In a Section 2255 proceeding, a petitioner bears the burden of proof by a preponderance of the evidence.  See Triana v. United States, 205 F.3d 36, 40 (2d Cir. 2000).

### 2.  Ineffective Assistance of Counsel

Petitioner argues that his trial counsel was constitutionally ineffective in three material respects: (1) she failed to present witnesses who would have demonstrated that one of the government's witnesses, Joseph DallVechia, testified falsely when he (DallVechia ) asserted that Petitioner introduced DallVechia to co-defendant John Bruno for purposes of carrying out the underlying hijacking and theft of computer parts and that, before this introduction, DallVechia and Bruno did not know each other;  (2) she failed to produce a chart prepared by Petitioner, or call Petitioner or any other witness, to establish that the checks written by Petitioner to Bruno were legitimate business transactions and not, as the Government contended, the distribution of profits from the underlying crimes; and (3) she failed to present a witness who would have testified that Petitioner always kept the trailers on his property unlocked and, therefore, would have established that  DallVechia testified falsely when he stated that the stolen computer chips were kept in a "locked trailer" on Petitioner's property.

In order to state a cognizable Sixth Amendment claim for ineffective assistance of counsel, Petitioner must prove: "(1) counsel's conduct 'fell below an objective standard of reasonableness,' and (2) this incompetence caused prejudice to ...defendant." United States v. Guevara, 277 F.3d 111, 127 (2d Cir. 2001) (quoting Strickland v. Washington, 466 U.S. 668, 687-88 (1984)).  In analyzing the first prong of Strickland, the Court "must indulge in a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Strickland, 466

U.S. at 689.  Given this presumption, "the burden rests on the accused to demonstrate a constitutional violation." United States v. Cronic, 466 U.S. 648, 658 (1984).  The standard is one of objective reasonableness, and "[t]he first prong of the Strickland test is not satisfied merely by showing that counsel employed poor strategy or made a wrong decision. Instead, it must be shown that counsel 'made errors so serious that counsel was not functioning as the 'counsel' guaranteed ... by the Sixth Amendment.'" Jackson v. Moscicki, 2000 WL 511642, at * 7 (S.D.N.Y. April 27, 2000) (quoting Strickland, 466 U.S. at 687); see Kimmelman v. Morrison, 477 U.S. 365, 381 (1985) (Petitioner bears the burden of proving "that counsel's representation was unreasonable under prevailing professional norms and that the challenged action was not sound strategy.") (citing Strickland, 466 U.S. at 688-89).   Furthermore, the Court must evaluate counsel's performance from her perspective at the time of the alleged errors and in the same circumstances. Garcia v. United States, 15 F. Supp.2d 367, 379 (S.D.N.Y. 1998) (citing Strickland, 466 U.S. at 689).

To satisfy the second prong of Strickland, Petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694.

"The Petitioner concedes that reasonable strategic decisions, even those that fail, will not justify vacatur of his conviction."  Pet.'s Memo. L., p. 25.  He argues, however, that although the three above-referenced decisions by trial counsel were strategic in nature,  they lacked even a reasonable basis and caused him to be convicted.  He contends,  therefore, that he has presented viable claims under Strickland.  Id. The Court disagrees.

Looking first at Petitioner's claims that his former counsel was ineffective for failing to call

witnesses to show that one of the Government's chief witnesses, DallVechia, perjured himself about knowing co-defendant Bruno before Robert's introduction, or that the computer chips were stored in a locked trailer on Petitioner's property, the Court notes that it is well settled that an attorney's decision "whether to call specific witnesses--even ones that might offer exculpatory evidence--is ordinarily not viewed as a lapse in professional representation." United States v. Best, 219 F.3d 192, 201 (2d Cir. 2000).  The decision of whether or not to call a particular witness is a matter of trial strategy which the courts will generally not second guess. United States v. Schmidt, 105 F.3d 82, 83 (2d Cir. 1997); see United States v. Nersesian, 824 F.2d 1294, 1321 (2d Cir.)("The decision whether to call any witnesses on behalf of the defendant, and if so which witnesses to call, is a tactical decision of the sort engaged in by defense attorneys in almost every trial."), cert denied 484 U.S. 958 (1987).

     While it is easy to sit back and argue, after the jury has rendered a verdict, that if trial counsel had only called one or two more witnesses, the jury would have totally disregarded everything DallVechia said at trial, the proper perspective is from counsel's chair at the time of trial.  The halls of every courthouse are filled with stories of attorneys who were "winning" their cases but decided to call one more witness to put the proverbial nail in the coffin, only to be unpleasantly surprised when the witness gave testimony so damaging that the verdict went against the client. There could have been any number of strategic reasons for not calling these witnesses, including, but not limited to, the belief that DallVechia's credibility had already been sufficiently undermined on the Government's case-in-chief.  See Bruno v. United States, 05-CV-301 (N.D.N.Y.), 10/17/05

Dec. & Ord., pp. 9-11 [dkt. # 12].² In this regard, trial counsel could have reasonably believed that DallVechia's credibility had been so severely damaged on the Government's case that the Government would not meet its burden of proof (as Petitioner asserts he was told by counsel, see Roberts Reply Aff. ¶10), and reasonably feared that the testimony from Petitioner's witnesses (most of whom were Petitioner's family, close friends, or employees, see dkt. #1, Ex. A - M) could have backfired.

Further, counsel could have reasonably believed that proving that DallVechia and Bruno knew each other before the commission of the crime, or that Petitioner had trailers on his property, albeit unlocked, would have served only to bolster parts of the Government's case and not establish DallVechia's complete lack of veracity or Petitioner's innocence. Petitioner's speculation, based upon hindsight, that the testimony *might have* swayed the jury the other way does not overcome the strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance. Cox v. Donnelly, 387 F.3d 193, 198 (2d Cir. 2004); see Mayo v. Henderson, 13 F.3d 528, 533 (2d Cir. 1994)(Petitioner offers little more than "hindsight to second-guess his [counsel's] strategy choices.").

Still further, the claims regarding these two strategic decisions fail under the second prong of the Strickland test. Assuming, *arguendo,* that counsel established that DallVechia and Bruno knew each other before the crime (a proposition already before the jury) and that the stolen goods were not kept in a locked trailer on Petitioner's property, or that DallVechia lied about these facts, there was still sufficient evidence of Petitioner's guilt to overcome the argument that, but for these purported

---

² As pointed out in the recent Decision and Order on co-defendant Bruno's Section 2255 motion, the question of whether DellVechia and Bruno knew each other before engaging in the underlying criminal conduct had been contradicted by DellVechia's own testimony at trial, and examined by defense counsel on cross-examination.

6

unprofessional errors, the result of the proceeding would have been different. Having presided over the case, the Court is firmly of the belief that testimony from these witnesses, had it been offered, would not have changed the verdict. See United States v. Sapia, 2002 WL 620483, at *4 (S.D.N.Y. April 18, 2002).[3] As the record demonstrates, the evidence of Petitioner's guilt was sufficient to overcome both a post-trial motion for acquittal and an appeal . See United States v. Bruno, 00-CR-578 (N.D.N.Y.), Sept. 25, 2002 Decision & Ord. [dkt. #128] (denying post-trial motion);[4] United States v. Bruno, 83 Fed. Appx. 361 (2d Cir. 2003)(denying appeal). The fact that DallVechia might not have been the most credible witness, or might have inaccurately recalled events during the conspiracy, does not negate the proof that demonstrated, to the satisfaction of 12 men and women on the jury, that Petitioner was guilty beyond a reasonable doubt of the crimes of conviction. Thus, the claims fail under the second prong of the Strickland test.

The third strategic decision that the Petitioner challenges was not to call "witnesses to explain that the checks that On-Site received for the hauling that it was contracted to do at the Metro facility in Croton, and the subsequent checks it wrote to Bruno Demolition [, owned by co-defendant John Bruno,] as its subcontractor, were for legitimate business transactions and not for some cover-up to distribute the proceeds of stolen property." Pet.'s Memo. L., p. 26. Petitioner's argument in this regard is not entirely clear, but it seems to be based upon the contention that trial counsel performed in a constitutionally ineffective manner by advising Petitioner not to take the

---

[3] In deciding a Section 2255 petition without a hearing, "a district court may rely on its own familiarity with the case and deny the 2255 motion where the motion lacks 'meritorious allegations that can be established by competent evidence.'" United States v. Sapia, 2002 WL 620483 at *4 (quoting Stokes v. United States, 2001 WL 29997, at *2 (S.D.N.Y. Jan. 9, 2001)).

[4] In the post-trial motion, Petitioner argued that he was entitled to a verdict of acquittal, or, alternatively, to a new trial, on the grounds that DallVechia committed perjury on different matters then are presented here.

stand to testify about the checks that the Government presented. See Roberts Aff. in Supp. of Pet. ¶¶ 18-39;[5] Reply Aff. ¶ 12.[6]

Like the other ineffective assistance of counsel claims, Petitioner's argument is based upon nothing more than after-the-fact second-guessing of a decision that appeared, at the time of trial, to be professionally sound. See Pet. Reply Aff. ¶ 13 (acknowledging that, during the trial, Petitioner agreed with trial counsel's advice that he should not to take the stand.). Given the evidentiary rulings made by the Court, see United States v. Bruno, 83 Fed. Appx. at 363,[7] it was not beyond the

---

[5] In his Affidavit in Support of the Petition, Petitioner asserts that he had prepared a chart of the payments he made to co-defendant Bruno and provided counsel with the reason for each check. He contends that if "a witness" were called to the stand, this evidence could have been presented to a jury. See Pet. Aff. ¶¶ 18-39. Of course, it appears that the witness who could have established the foundation for the chart, or provided the reason for the checks, was Petitioner himself.

[6] In his Reply Affidavit, Petitioner attests:

12. When I told [trial counsel] that I wanted to take the stand in my own defense, she told me; "We don't need to prove our innocence, they need to prove our guilt." Further, she told me that if I took the stand I could be questioned about allegations of illegal dumping that had been brought in a case in the Southern District of New York. I have since been informed by counsel that [trial counsel] could have filed a motion prior to the trial, *in limine*, asking the Court to forbid any questioning about these other allegations should I testify in my own defense. I don't believe any such motion was ever filed. But even though I did not know such a motion could have been made, I told her nonetheless that I wanted to testify, and said that if I were asked about the illegal dumping allegations I would assert my Fifth Amendment privilege. This was a very serious case and I felt that if the jury did not hear from me personally I might very well be convicted. If I had to deal with the illegal dumping issue, I was prepared to do so. Nonetheless, she insisted that I should not take the stand.

Reply Aff. ¶ 12.

[7] The Second Circuit held:

The defendants also contend that the district court improperly admitted prior acts evidence of illegal dumping and Bruno's statements about the Colombo crime family in violation of Fed.R.Evid. 403 and 404(b). The district court did not abuse its discretion in admitting the evidence of illegal dumping because the evidence was offered to show that checks passing between the defendants was due to the charged crimes, which was highly probative of the relationship between the defendants and their connection to the charged crimes. This evidence was not unfairly prejudicial, particularly in light of the court's limiting instruction to the jury.

83 Fed. Appx. at 363.

norms of professional competence to advise Petitioner not to take the stand, especially if trial counsel felt that the Government had not proved its case.  Thus, inasmuch as the claim is based upon the failure to call Petitioner to the stand to testify about the checks, the claim fails on the first prong of the Strickland test.

The allegations that trial counsel acted in a professionally incompetent manner by failing to call some other, unnamed witness, or generally failing to prepare for trial, are insufficiently vague to support a Strickland claim. See Sirotnikov v. United States, 1998 WL 770557, at *4 (S.D.N.Y. Nov., 1998)("Petitioner's naked assertion that his trial counsel 'failed to adequately perform pretrial research and investigation,' does not establish ineffective assistance of counsel."); Vasquez v. United States, 1997 WL 148812, at *1-2 (S.D.N.Y. Mar. 28, 1997)("[P]etitioner's allegations with regard to alleged counsel errors in pre-trial preparation and investigation and trial advocacy are 'vague, conclusory, and unsupported by citation to the record, any affidavit, or any other source,' and, accordingly, ... '[t]he vague and unsubstantiated nature of the claims' defeated petitioner's claim of ineffective assistance of counsel...."); Hartley v. Senkowski, 1992 WL 58766, at *2 (E.D.N.Y. Mar. 18, 1992)("In light of this demanding [Strickland] standard, petitioner's vague and conclusory allegations that counsel did not prepare for trial or object to errors carry very little weight."); Parnes v. United States, 1995 WL 758805, at *3 (S.D.N.Y. Dec. 21, 1995)("[V]ague allegations do not permit the Court to conclude that the alleged errors of Petitioner's counsel fell below 'prevailing professional norms'.... Accordingly, the Court rejects Petitioner's claim that he received ineffective assistance of counsel."); Matura v. United States, 875 F. Supp. 235, 237-38 (S.D.N.Y. 1995)(mere conclusory allegations that counsel was ineffective fails "to establish that his counsel's performance was deficient [and] .... fails to overcome the presumption [under Strickland]

that counsel acted reasonably....").

Further, even assuming that trial counsel's performance related to the various checks could be judged professionally incompetent, Petitioner still fails to demonstrate that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694. Given the overwhelming evidence of Petitioner's participation in the crimes of conviction, the Court's confidence in the outcome of the trial would not be undermined even if the Government could not have pinpointed the distribution of the criminal proceeds to checks from Petitioner's business. That is, assuming arguendo that Petitioner (or some other witness) testified that the checks from Petitioner's business to Bruno's business were for legitimate transactions, there was still enough evidence of Petitioner's participation in the underlying crimes to support his conviction. Accordingly, the claim fails under the second prong of the Strickland test. See Slevin v. United States, 1999 WL 549010 at *5 (S.D.N.Y. July 28, 1999)(Petitioner's allegations regarding his counsel "do not demonstrate that absent the alleged errors, the outcome of the trial would have been different... Accordingly, such purported lack of preparation cannot be deemed ineffective assistance of counsel." ), aff'd, 234 F.3d 1263 (2d Cir. 2000).

### 3. Denial of Due Process

Petitioner next argues that he was denied due process because two of the Government's witnesses- DallVechia and Joseph Mannese - perjured themselves at trial causing substantial doubt to be cast on Petitioner's conviction. Petitioner does not contend that the perjury "was known to or otherwise procured by the prosecution," Pet.'s Memo. L., p. 28, but asserts that the false testimony was on material issues that affected the outcome of the trial and, therefore, his conviction must be

set aside. See Ortega v. Duncan, 333 F.3d 102, 108 (2d 2003)(Generally, in order to challenge a conviction on the basis of perjured testimony, a petitioner must also show that "the testimony was material and ... but for the perjured testimony, the defendant would most likely not have been convicted."). Again, the Court disagrees.

Petitioner unsuccessfully raised a similar due process argument on appeal, see United States v. Bruno, 83 Fed. Appx. at 362,[8] and he now attempts to avoid the obvious procedural bar to this claim by asserting that the "perjury" concerned matters other than those previously addressed. See United States v. Sanin, 252 F.3d 79, 83 (2d Cir. 2001)(It is well settled that a § 2255 motion cannot be used to "relitigate questions which were raised and considered on direct appeal.")(quotation omitted). In this regard, he asserts that : (1) DallVechia lied when he said that he did not know Bruno before the conspiracy was formed; (2) DallVechia and Mannese lied when they said that the stolen property was stored in a locked trailer on Petitioner's property; (3) DallVechia lied when he testified that he and Petitioner traveled together to Philadelphia to meet with the "fence" for the stolen goods; and (4) DallVechia lied when he said that he provided cash proceeds from the sale of the stolen good to Petitioner who, in turn, distributed the proceeds to Bruno through business checks. See Pet., p. 6. While it would appear that these claims are procedurally barred because they could have been raised on appeal but were not, see Johnson v. United States, 313 F.3d 815, 817

---

[8] In this regard, the Second Circuit held:

We reject the defendants' argument that they each deserve a judgment of acquittal under Fed.R.Crim.P. 33 or a new trial under Fed.R.Crim.P. 29(c) because a main government witness perjured himself so as to render the entire trial unfair. The district court did not clearly err in finding that this witness did not commit perjury. Each instance of this witness's allegedly perjurious testimony merely differed from either another witness's testimony, his own prior testimony, or his own prior out-of-court statements. These situations do not amount to perjury, but present a credibility question for the jury.

83 Fed. Appx. at 362.

(2d Cir. 2002)("Section 2255 claims not raised on direct review are procedurally barred unless they raise constitutional or jurisdictional claims, or result in a complete miscarriage of justice." ) (quotation marks and citation omitted);  Rosario v. United States, 164 F.3d 729, 732 (2d Cir. 1998)("Where a criminal defendant has procedurally forfeited his claim by failing to raise it on direct review, the claim may be raised in a § 2255 motion only if the defendant can demonstrate either: (1) cause for failing to raise the issue, and prejudice resulting therefrom; or (2) actual innocence."), the Court need not engage in an "actual innocence" analysis because the claims patently fail on the merits.

"A Section 2255 motion is not a vehicle for rearguing the credibility of witnesses." Conteh v. United States, 226 F. Supp.2d 514, 519-20 (S.D.N.Y. 2002).  Moreover, "a showing of perjury at trial does not in itself establish a violation of due process warranting habeas relief." Ortega, 333 F.3d at 108.  Where  the government did not know about the alleged perjury, "a new trial is warranted only if (1) the testimony was material, and (2) the court is left with a firm belief that but for the perjured testimony, the defendant would most likely not have been convicted." Freeman v. United States, 2005 WL 1498289, at * 4 (E.D.N.Y. June 15, 2005) (citing Conteh, 226 F. Supp.2d at 519-20 (internal citations and quotations omitted)).

Beyond presenting affidavits from third parties that, if believed, would demonstrate merely that DallVechia and Bruno knew each other well before the conspiracy (an issue already in dispute before the jury) and that the various affiants did not see locks on the trailers on Petitioner's property, Petitioner has failed to present proof that any witness lied on a material issue.  As referenced above, the nature of Bruno and DallVechia's pre-conspiracy relationship amounted to a credibility issue that was placed before the jury, and the lack of any pre-conspiracy relationship was immaterial to

the commission of the crimes. It was also immaterial whether Petitioner's trailers had locks on them. The questions of whether Petitioner took a trip to Philadelphia to meet the fence, or whether he laundered the proceeds of the crime through his business, while perhaps strongly impacting credibility issues of government witnesses, were not material to the crimes of conviction. Further, even assuming that the witnesses testified falsely in the manners asserted, there was still sufficient evidence of Petitioner's participation in the crimes of conviction such to leave the Court with the firm belief that, even if the referenced testimony was false, Petitioner most likely would have been convicted. See Freeman, 2005 WL 1498289, at * 4 (rejecting a similar argument based upon "weak and uncertain evidence" of perjury in the face of strong evidence of guilt). Therefore, the due process claim is dismissed.

### 4. Apprendi

Finally, Petitioner claims that his sentence violated the principles set forth in Apprendi v. New Jersey, 530 U.S. 466 (2000). In this regard, he alleges that because the jury did not find facts that supported this Court's determination of a sentence enhancement, his sentence is not constitutionally permissible. Petitioner's argument is without merit.

In Apprendi, the United States Supreme Court held that any fact, other than that of a prior conviction, "that increases the penalty for a crime *beyond the prescribed statutory maximum* must be submitted to a jury, and proved beyond a reasonable doubt." Id. at 491 (emphasis added). However, there is nothing in Apprendi "that alters a sentencing judge's traditional authority to determine those facts relevant to selection of an appropriate sentence within the statutory maximum. . . ." U.S. v. Garcia, 240 F.3d 180, 183 (2d Cir. 2001); see United States v. Thomas, 274 F.3d 655, 664 (2d Cir. 2001)(*en banc*)(The "constitutional rule of Apprendi does not apply where the sentence

13

imposed is not greater than the prescribed statutory maximum for the offense of conviction.").

Petitioner was convicted for violating two counts under section 1951(a), and for violating one count of both section 371 and section 2314, allowing the Court a maximum sentence of 240 months for counts one and two each, sixty months for count three, and 120 months for count four. The Court sentenced Petitioner for terms of 168 months for each of counts one and two, sixty months for count three, and 120 months for count four. Accordingly, since none of the penalties in Petitioner's sentence rise above the statutory maximum, <u>Apprendi</u> does not apply. To the extent Petitioner argues that his sentence is in violation of the subsequently decided cases of <u>Blakely v. Washington</u>, 542 U.S. 296 (2004), and <u>United States v. Booker</u>, --- U.S. ----, 125 S. Ct. 738 (2005), the argument is without merit because neither <u>Booker</u> nor <u>Blakely</u> apply retroactively to matters on collateral review. <u>Guzman v. United States</u>, 404 F.3d 139, 140 & 144 (2d Cir. 2005). Accordingly, these case offer Petitioner no relief.

**IV. CONCLUSION**

For the foregoing reasons, Petitioner's motion pursuant to 28 U.S.C. § 2255 is **DENIED** and the petition seeking a writ of habeas corpus is **DISMISSED**.

**IT IS SO ORDERED.**

DATED:November 9,2005

_Thomas J. McAvoy_
Thomas J. McAvoy
Senior, U.S. District Judge