**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**DAMON C. ROBERTS,**

      **Petitioner,**   **04-CV-1397**
             **(00-CR-578)**

  **v.**

**UNITED STATES OF AMERICA,**

      **Respondent.**

_____

**THOMAS J. McAVOY,**
**Senior United States District Judge**


**DECISION & ORDER**

## I.  INTRODUCTION

   This Court previously denied and dismissed Petitioner's application to vacate his judgement

or sentence pursuant to 28 U.S.C. § 2255.  See 11/09/05 Dec. & Ord. [dkt. # 18].  Petitioner now

moves for reconsideration of the Court's decision, or, in the alternative, for a Certificate of

Appealability pursuant to 28 U.S.C. § 2253.  The Government has opposed the motion.  For the

reasons that follow, the motion is granted in part and denied in part.

## II.  THE STANDARD FOR RECONSIDERATION

   "The standard for granting [a motion for reconsideration] is strict, and reconsideration will

generally be denied unless the moving party can point to controlling decisions or data that the court

overlooked-- matters, in other words, that might reasonably be expected to alter the conclusion

reached by the court." Schrader v. CSX Transp., Inc., 70 F.3d 255, 257 (2d Cir. 1995); see also

1

Eisemann v. Greene, 204 F.3d 393, 395 n. 2 (2d. Cir 2000)(To sustain a motion for reconsideration, Petitioner "'must demonstrate that the Court overlooked controlling decisions or factual matters that were put before it on the underlying motion.'" )(quoting Shamis v. Ambassador Factors Corp., 187 F.R.D. 148, 151 (S.D.N.Y. 1999)); Polanco v. United States, 2000 WL 1346726, at *1 (S.D.N.Y. September 19, 2000); Califano v. United States, 1998 WL 846779, at *1 (E.D.N.Y. September 4, 1998). "The high burden imposed on the moving party has been established in order to dissuade repetitive arguments on issues that have already been considered by the court and discourage litigants from making repetitive arguments on issues that have been thoroughly considered by the court [and] to ensure finality and prevent the practice of a losing party examining a decision and then plugging the gaps of the lost motion with additional matters." Nowacki v. Closson, 2001 WL 175239, *1 (N.D.N.Y. Jan. 24, 2001)(Munson, J.)(internal citations and quotations omitted). Petitioner "may neither repeat 'arguments already briefed, considered and decided,' nor 'advance new facts, issues or arguments not previously presented.'" In re Application of the United States, 396 F. Supp. 2d 294, 301 (E.D.N.Y. 2005) (quoting Schonberger v. Serchuk, 742 F. Supp.108, 119 (S.D.N.Y. 1990)); see also Shamis, 187 F.R.D. at 151 ("[T]he court must not allow a party to use the motion to reargue as a substitute for appealing from a final judgment. Therefore, a party in its motion for reargument may not advance new facts, issues or arguments not previously presented to the court.")(citations and internal quotation marks omitted).

## III.   DISCUSSION

### a.  Due Process Claim

On his Section 2255 motion, Petitioner proceeded on three theories, one of which was that he was denied due process because the government unknowingly used perjured testimony to secure

his conviction.  In this regard, Petitioner asserted that two of the government's witnesses, Joseph

DallVechia and Joseph Mannese, lied at trial when (1) DallVechia testified that he did not know

Bruno before the conspiracy was formed; (2) DallVechia and Mannese testified that the stolen

property was stored in a locked trailer on Petitioner's property; (3) DallVechia testified that he and

Petitioner traveled together to Philadelphia to meet with the "fence" for the stolen goods; and (4)

DallVechia testified that he provided cash proceeds from the sale of the stolen good to Petitioner

who, in turn, distributed the proceeds to Bruno through business checks. <u>See</u> Pet., p. 6.  The Court

noted that  "[w]hile it would appear that these claims are procedurally barred because they could

have been raised on appeal but were not," it determined not to "engage in an 'actual innocence'

analysis because the claims patently fail[ed] on the merits."   11/09/05 Dec. & Ord., p. 12.

  On the merits, the Court held:

> "A Section 2255 motion is not a vehicle for rearguing the credibility of witnesses."
> <u>Conteh v. United States</u>, 226 F. Supp.2d 514, 519-20 (S.D.N.Y. 2002).  Moreover, "a
> showing of perjury at trial does not in itself establish a violation of due process
> warranting habeas relief." <u>Ortega</u>, 333 F.3d at 108.  Where  the government did not
> know about the alleged perjury, "a new trial is warranted only if (1) the testimony
> was material, and (2) the court is left with a firm belief that but for the perjured
> testimony, the defendant would most likely not have been convicted." <u>Freeman v.
> United States</u>, 2005 WL 1498289, at * 4 (E.D.N.Y. June 15, 2005) (citing <u>Conteh</u>,
> 226 F. Supp.2d at 519-20 (internal citations and quotations omitted)).

> Beyond presenting affidavits from third parties that, if believed, would demonstrate
> merely that DallVechia and Bruno knew each other well before the conspiracy (an
> issue already in dispute before the jury) and that the various affiants did not see locks
> on the trailers on Petitioner's property, Petitioner has failed to present proof that any
> witness lied on a material issue.  As referenced above, the nature of Bruno and
> DallVechia's pre-conspiracy relationship amounted to a credibility issue that was
> placed before the jury, and the lack of any pre-conspiracy relationship was
> immaterial to the commission of the crimes.  It was also immaterial whether
> Petitioner's trailers had locks on them. The questions of whether Petitioner took a
> trip to Philadelphia to meet the fence, or whether he laundered the proceeds of the
> crime through his business, while perhaps strongly impacting credibility issues of
> government witnesses, were not material to the crimes of conviction.  Further, even

assuming that the witnesses testified falsely in the manners asserted,  there was still
sufficient evidence of Petitioner's participation in the crimes of conviction such to
leave the Court with the firm belief that, even if the referenced testimony was false,
Petitioner most likely would  have been convicted.  <u>See</u> <u>Freeman</u>, 2005 WL 1498289,
at * 4 (rejecting a similar argument based upon "weak and uncertain evidence" of
perjury in the face of strong evidence of guilt).  Therefore, the due process claim is
dismissed.

<u>Id.</u>, pp. 12-13.

Petitioner now asserts that the Court's factual and legal conclusion were erroneous.

Regarding the Court's factual conclusions, Petitioner argues that the Court misconstrued the

evidence when it stated that the issue of whether DallVechia knew Petitioner's co-defendant, John

Bruno, before the underlying conspiracy was formed was "already in dispute before the jury."  In

making this argument, Petitioner contends that a footnote in the Decision and Order was factually

inaccurate. <u>See</u> Dec. & Ord.,  p. 6, n. 2 ("As pointed out in the recent Decision and Order on co-

defendant Bruno's Section 2255 motion, the question of whether DallVechia and Bruno knew each

other before engaging in the underlying criminal conduct had been contradicted by DallVechia's

own testimony at trial, and examined by defense counsel on cross-examination.").   Petitioner

contends that the question of DallVechia and Bruno's prior relationship was not in dispute and that:

the Court misunderstood what Mr. Bruno was saying in his Petition. The assertion in
Bruno's Petition that - "[a]s the Court will recall, at trial DallVechia testified that he
had only met this petitioner [Bruno] twice prior to the hijacking"- was not a claim
that DallVechia testified that he knew Bruno previously. What Mr. Bruno was
saying, was that DallVechia had testified that he had met with Bruno two times **after
the purported introduction by Petitioner**, **but before the actual hijacking itself
was carried out**.

Pet. Mem. L. in Supp. Recon., p. 6 (emphasis in original).

How Roberts knows what Bruno "was saying" in his separate Section 2255 motion is

beyond the Court.  But even accepting Robert's interpretation of Bruno's statement, it does not

4

contradict the Court's interpretation that there was some testimony *from DallVechia* that he and Bruno knew each other before the crimes were committed.   Further, in arguing that this issue was *not in dispute* before the jury, Roberts cites to portions of the trial transcript in which DallVechia was cross-examined about his prior relationship with Bruno.  See id. pp. 6-7.  While DallVechia might have "been unwavering in his testimony that he had never met John Bruno before the alleged introduction by the Petitioner," id. p. 6, DallVechia was cross-examined for the purpose of challenging this representation.  The cross-examination was clearly intended to, and did, put the nature of DallVechia and Bruno's relationship into issue before the jury.  Simply because the cross-examiner was unable to "crack" DallVechia on the stand does not mean that the issue was not raised.  Petitioner's argument that the Court reached a clearly erroneous factual conclusion is unavailing and presents no viable basis for reconsideration .

Petitioner also argues that the Court reached an erroneous legal conclusion when it determined that the purported lies were not material to the crimes of conviction. The Court disagrees.  Whether DallVechia introduced Roberts to Bruno, or whether the stolen property was stored in a locked or unlocked trailer, or even whether DallVechia accompanied Roberts to New Jersey to meet the fence, does not negate the essential elements of the crimes of conviction. While Petitioner may feel that the Government's case against him would have collapsed if counsel had presented certain witnesses or evidence that would have contradicted DallVechia's testimony, see Pet. Mem. L. in supp. Rec., p. 11 ("Had the Petitioner's trial counsel presented the numerous witnesses assembled by the Petitioner who would have directly established that DallVechia had outright lied to the jurors about these critical events, it is respectfully asserted that his testimony - as well as Mannese's - would have been rejected in toto."), the Court disagrees.  See United States v.

5

Stewart, 433 F.3d 273, 296-97 (2d Cir. 2006);[1] see also Conteh v. United States, 226 F. Supp.2d
514, 520-21 (S.D.N.Y. 2002)(rejecting a similar  "'for want of a nail, the kingdom was lost' sort of
argument.").  The evidence, if presented, would have arguably further impugned DallVechia's
already maligned credibility, but it would not have assured Petitioner of an acquittal. Rather, it
would have been "the sort of cumulative impeachment material that is routinely held insufficient to
warrant a new trial because it does not undermine the confidence in the verdict." United States v.
Wong, 78 F.3d 73, 82 (2d Cir. 1996)(citations and quotation marks omitted).  As the Court
concluded previously,  "even assuming that the witnesses testified falsely in the manners asserted,
there was still sufficient evidence of Petitioner's participation in the crimes of conviction such to
leave the Court with the firm belief that, even if the referenced testimony was false, Petitioner most
likely would  have been convicted."  Dec. & Ord. p. 13.  Thus, the evidence was not material. See
Stewart, 433 F.3d at 299-300.[2]

---

[1] The Second Circuit wrote in Stewart:

We have frequently acknowledged that, even where newly discovered evidence indicates perjury,
motions for new trials should be granted only with great caution and in the most extraordinary
circumstances. So cautioned, the trial court's discretion to decide whether newly discovered evidence
warrants a new trial is broad because its vantage point as to the determinative factor-whether newly
discovered evidence would have influenced the jury-has been informed by the trial over which it
presided.

* * *

Perjury in and of itself is insufficient to justify relief under Rule 33.  Rather, when a trial has been
tainted by false testimony, this Court is called upon to strike a fair balance between the need for both
integrity and finality in criminal prosecutions by determining whether false testimony was prejudicial
in the sense that it affected the outcome of the trial. . . . [I]f the prosecution was not aware of the
perjury, a defendant can obtain a new trial only where the false testimony leads to a firm belief that but
for the perjured testimony, the defendant would most likely not have been convicted.

433 F.3d at 296- 97 (interior quotation marks and citations omitted).

[2] In addressing the question of materiality, the Second Circuit wrote in Stewart:

(continued...)

Petitioner's arguments addressed to the due process claim are simply attempts to fill the fatal gaps as pointed out by the Court's previous Decision and  Order.  Accordingly, the motion in this regard presents no viable basis for reconsideration and is denied. See Nowacki, 2001 WL 175239, at *1.

**b.  Ineffective Assistance of Counsel Claim**

Similarly, Petitioner attempts to reargue the points of his failed ineffective assistance of counsel claim[3] by rebutting the Court's conclusions on the "objective standard of reasonableness" prong of the Strickland test.  See United States v. Guevara, 277 F.3d 111, 127 (2d Cir. 2001) (In order to state a cognizable Sixth Amendment claim for ineffective assistance of counsel, Petitioner must prove: "(1) counsel's conduct 'fell below an objective standard of reasonableness,' and (2) this incompetence caused prejudice to . . . defendant.") (quoting Strickland v. Washington, 466 U.S. 668, 687-88 (1984)).   Not only is this tact improper on a motion for reconsideration, Nowacki, 2001 WL 175239, at *1, it is legally unavailing because the Court concluded that the claim also

---

[2](...continued)
Ultimately, whether the prosecution was aware of the alleged perjury is of no moment, because we conclude that the testimony in question was not material under either standard.   That is to say, whether we ask if the verdict "might have been different" or if it "probably would have been different" had the jurors known (i) the truth about Lawrence's involvement in the ink testing and his awareness of his colleagues' book proposal discussing densitometry and (ii) that Lawrence had lied under oath about those matters, the answer is no.   Therefore, we conclude that the District Court did not err in finding that Lawrence's false statements were not material either as to the factual elements of the Government's case or for impeachment value, had the misrepresentations been exposed at trial.

433 F.3d at 299-300.

[3]Petitioner argued that his trial counsel was constitutionally ineffective in three material respects: (1) she failed to present witnesses who would have demonstrated that Joseph DallVechia testified falsely when he asserted that Petitioner introduced DallVechia to co-defendant John Bruno for purposes of carrying out the underlying hijacking and theft of computer parts and that, before this introduction, DallVechia and Bruno did not know each other;  (2) she failed to produce a chart prepared by Petitioner, or call Petitioner or any other witness, to establish that the checks written by Petitioner to Bruno were legitimate business transactions and not, as the Government contended, the distribution of profits from the underlying crimes; and (3) she failed to present a witness who would have testified that Petitioner always kept the trailers on his property unlocked and, therefore, would have established that  DallVechia testified falsely when he stated that the stolen computer chips were kept in a "locked trailer" on Petitioner's property.

failed under the second prong of the Strickland test. See Dec. & Ord. p. 6-10.   Thus, even if his

counsel's tactical decisions fell below an objective standard of reasonableness, Petitioner was not

denied constitutionally effective assistance of counsel at trial. The motion in this regard is denied.

**c.  Apprendi Claim**

Petitioner also argues that the Court should reconsider Petitioner's claim brought under

Apprendi v. New Jersey, 530 U.S. 466 (2000), because the Court premised its decision on a legal

basis that was not proffered by Petitioner.   The Court previously held:

> Petitioner claims that his sentence violated the principles set forth in Apprendi v.
> New Jersey, 530 U.S. 466 (2000).  In this regard, he alleges that because the jury did
> not find facts that supported this Court's determination of a sentence enhancement,
> his sentence is not constitutionally permissible.  Petitioner's argument is without
> merit.
>
> In Apprendi, the United States Supreme Court held that any fact, other than that of a
> prior conviction, "that increases the penalty for a crime *beyond the prescribed
> statutory maximum* must be submitted to a jury, and proved beyond a reasonable
> doubt." Id. at 491 (emphasis added).  However, there is nothing in Apprendi "that
> alters a sentencing judge's traditional authority to determine those facts relevant to
> selection of an appropriate sentence within the statutory maximum. . . ." U.S. v.
> Garcia, 240 F.3d 180, 183 (2d Cir. 2001); see United States v. Thomas, 274 F.3d
> 655, 664 (2d Cir. 2001)(*en banc*)(The "constitutional rule of Apprendi does not apply
> where the sentence imposed is not greater than the prescribed statutory maximum for
> the offense of conviction.").
>
> Petitioner was convicted for violating two counts under section 1951(a), and for
> violating one count of both section 371 and section 2314, allowing the Court a
> maximum sentence of 240 months for counts one and two each, sixty months for
> count three, and 120 months for count four.  The Court sentenced Petitioner for terms
> of 168 months for each of counts one and two, sixty months for count three, and 120
> months for count four.  Accordingly, since none of the penalties in Petitioner's
> sentence rise above the statutory maximum, Apprendi does not apply. To the extent
> Petitioner argues that his sentence is in violation of the subsequently decided cases of
> Blakely v. Washington, 542 U.S. 296 (2004), and United States v. Booker, --- U.S.
> ----, 125 S. Ct. 738 (2005), the argument is without merit because neither Booker nor
> Blakely apply retroactively to matters on collateral review.  Guzman v. United States,
> 404 F.3d 139, 140 & 144 (2d Cir. 2005).

Dec. & Ord. p. 14.

Petitioner argues, however, that he was not contending that <u>Blakely</u> or <u>Booker</u> applied

retroactively on collateral review, but only that <u>Apprendi</u>, if correctly applied at his sentencing as

explained by <u>Blakely</u> or <u>Booker</u>, would have limited his sentence to 33 to 41 months. Pet. Mem. L.

in Supp. Recon., p. 12.[4]  In this regard, he asserts that the subsequently decided cases of  <u>Blakely</u>

and <u>Booker</u> "explained" that the <u>Apprendi</u> rule applied to the maximum sentence applicable under

the United States Sentencing Guidelines, not under Congress' statutory maximum.  <u>Id.</u> p. 13.  Thus,

Petitioner contends,

> based upon the "facts reflected in the jury's verdict," Petitioner's "statutory
> maximum" was 33 to 41 months. However, following the addition of a number of
> enhancements imposed by the District Court - based upon its factual findings
> applying a preponderance of the evidence standard - Petitioner was sentenced to a
> term of 168 months. This sentence both violated the Rule of Apprendi as well as
> Petitioner's constitutional rights.

<u>Id.</u> p. 14.  Accordingly, Petitioner argues that the Court engaged in an erroneous legal analysis when

it denied his <u>Apprendi</u> claim on the basis of  <u>Blakely</u> or <u>Booker</u>'s non-retroactivity. <u>Id.</u> p. 18.

---

[4]Petitioner asserts:

> In his Petition, Damon Roberts argued that his sentence must be vacated because it was imposed in
> violation of the Rule of Apprendi, and therefore, in violation of his rights guaranteed by the by the
> Fifth and Sixth Amendments to the United States Constitution. He pointed out that <u>Apprendi</u> was
> decided in June of 2000, and insofar as he was sentenced on October 22, 2002, the Rule of Apprendi
> applied to his case.

Pet. Mem. L. in Supp. Recon., p. 12.   He further asserts:

> In the Writ filed by Petitioner - and this is a matter of central importance to the analysis of his
> <u>Apprendi</u> claim - he specifically explained that he was not asking this Court to retroactively apply any
> "new rule of criminal procedure" - either from Blakely or Booker, but rather referred to the decision in
> Blakely only for its holdings that; (1) the Rule of Apprendi has always stood for the principle - from
> the time Apprendi was decided - that it was unconstitutional for a sentencing judge to impose a
> sentence greater than that authorized by the jury's verdict, and (2) the original formulation of the
> "Rule of Apprendi" and the "statutory maximum" component thereof, were not modified or altered in
> any subsequent decision(s) by the Court, including <u>Ring</u>, <u>Harris</u>, and/or <u>Blakely</u>.

<u>Id.</u>.

To the extent the Court misunderstood Petitioner's argument, the motion for reconsideration must be granted. To the extent that the <u>Apprendi</u> claim is reconsidered under Petitioner's clarified theory, it must be denied as lacking in merit.  As the Eastern District explained on an identical argument:

> Petitioner . . . was sentenced . . . well before the January 12, 2005 issuance of the <u>Booker</u> decision. Thus, under <u>Guzman</u>, to the extent that the Petitioner collaterally attacks his sentence based on <u>Booker</u>, his petition must be denied.
>
> After the <u>Guzman</u> decision came down, [petitioner] attempted to circumvent <u>Guzman</u>'s holding by arguing that re-sentencing was warranted not based on <u>Booker</u>, but on <u>Apprendi</u>, which had been decided at the time his conviction became final. . . .  Petitioner argues that <u>Booker</u> only reaffirms the holding of <u>Apprendi</u>, and therefore that the rule of law espoused in <u>Apprendi</u> (and affirmed in <u>Booker</u>) applies to his sentencing and supports his Sixth Amendment claim.
>
> [Petitioner's] Sixth Amendment claim based on <u>Apprendi</u> fails. The Second Circuit, in <u>Guzman</u>, rejected the argument that <u>Booker</u> simply reaffirms the holding of <u>Apprendi</u>. In <u>Guzman</u>, the Circuit Court explained: "If Booker were simply <u>Apprendi</u> again, we would not need to determine the retroactivity of <u>Booker</u> under <u>Teague</u>: since Guzman's conviction was not final when <u>Apprendi</u> issued, Guzman would be afforded any relief he could get under <u>Booker</u>." <u>Guzman</u>, 404 F.3d at 142. Rather, the court declared: "the result in <u>Booker</u> was not dictated by <u>Apprendi</u> ... It cannot be said that the result in <u>Booker</u> was apparent to 'all reasonable jurists'; in <u>Booker</u> itself, dissenters undertook to explain why the holding in <u>Booker</u> was not compelled by <u>Apprendi</u> or <u>Blakely</u>." <u>Id</u>. (internal citations omitted). Thus, the Petitioner's argument that <u>Booker</u> only affirms the prior holding of <u>Apprendi</u> is without merit.

<u>Lisnoff v. United States</u>, 2006 WL 1367413, at *3 - *4 (E.D.N.Y. May 18, 2006).

For the same reasons as those articulated in <u>Lisnoff</u>, Petitioner's <u>Apprendi</u> claim is without merit. Consequently, the claim is dismissed.

## IV.  CERTIFICATE OF APPEALABILITY

Petitioner also seeks a Certificate of Appealability pursuant to 28 U.S.C. § 2253.  A Certificate of Appealability will be granted when the petition presents viable issues upon which reasonable jurists could debate whether: (a) the sentence was imposed in violation of the

10

Constitution or laws of the United States; (b) the Court was without jurisdiction to impose such sentence; (c) the sentence was in excess of the maximum authorized by law; or (d) the sentence is otherwise subject to collateral attack. See Miller-El v. Cockrell, 537 U.S. 322, 123 S.Ct. 1029, 1039-1040 (2003); Slack v. McDaniel, 529 U.S. 473, 484 (2000); Barefoot v. Estelle, 463 U.S. 880, 893 (1983). The Court finds that the instant petition does not present any such issues. Therefore, a Certificate of Appealability pursuant to 28 U.S.C. § 2253 is denied.

**V.  CONCLUSION**

For the reasons set forth above, Petitioner's motion for reconsideration is **GRANTED IN PART and DENIED IN PART**. The motion for reconsideration is granted inasmuch as the Court reconsiders Petitioner's  Section 2255 Apprendi claim, and denied in all other respects. Upon reconsideration, Petitioner's Section 2255 Apprendi claim is **DENIED.** Thus, all claims asserted in Petitioner's Section 2255 motion have now been denied and the Petition is **DISMISSED**.

The Court further finds that Petitioner is not entitled to a Certificate of Appealability pursuant to 28 U.S.C. § 2253. Therefore, Petitioner's motion for a Certificate of Appealability is **DENIED**.

**IT IS SO ORDERED**

Dated:November 13,2006

Thomas J. McAvoy
Senior, U.S. District Judge

11